UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

MEGAN J. KRICK,                                                                 Case No. 16-cv-3782-KMM

        Plaintiff,

v.                                                                                                    **ORDER**

CAROLYN W. COLVIN,

        Defendant.

---

In this case, Megan Krick appeals the denial of her application for disability benefits by the Commissioner of Social Security.[1] This matter is now before the Court on the parties' motions for summary judgment. [Pl.'s Mot., ECF No. 18; Def.'s Mot., ECF No. 20.] Based on the parties' motions, the supporting memoranda, and the Court's review of the record as a whole, Ms. Krick's motion is denied, the defendant's motion is granted, and this matter is dismissed with prejudice.

**I.    Background**

On May 2, 2012,[2] Ms. Krick alleged that she was no longer able to work and applied to the Social Security Administration for disability benefits. [Tr. of Admin. Record ("AR") 182-90, ECF No. 13.] Before she filed her application, Ms. Krick worked for over ten years as a front desk representative for a medical clinic and for a little over a year as a customer service representative for a call center. [AR 215; *see also*

---

[1]     There is no dispute that Ms. Krick has exhausted administrative remedies or that the Court has subject matter jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

[2]     Originally, Ms. Krick alleged she became disabled on April 30, 2009, but later amended her alleged onset date to May 1, 2012.

*id.* at 34-37 (hearing testimony regarding past work).] Ms. Krick says that she became unable to work in 2012 due to a number of medical conditions, including:

> severe chronic pain;
> Ehlers-Danlos syndrome;[3]
> a back injury;
> a neck injury;
> knee injuries;
> shoulder injuries;
> bi-polar disorder;[4]
> fibromyalgia;
> irritable bowel syndrome;
> asthma;
> and drug and alcohol addiction.[5]

---

[3]   As another court within the Eighth Circuit has explained:

> Multiple types of Ehlers-Danlos Syndrome exist. . . . Hypermobility type Ehlers-Danlos Syndrome is characterized by excessively loose joints. The Gale Encyclopedia of Medicine states, "Both large joints, such as the elbows and knees, and small joints such as toes and fingers, are affected. . . . Many individuals experience chronic limb and joint pain, although x rays of these joints appear normal."

*Phelan v. Colvin*, No. 15-5195, 2017 WL 586366, at *1 n.2 (W.D. Ark. Jan. 18, 2017) (quoting 3 Java O. Solis, *Ehlers-Danlos Syndrome*, in *The Gale Encyclopedia Of Medicine* 1674-78 (Jacqueline L. Longe ed., 5th ed. 2015)). Ms. Krick described hypermobility in her joints. [*See* AR 47-48.]

[4]   At the hearing before an Administrative Law Judge ("ALJ"), Ms. Krick's counsel indicated that mental health concerns were secondary to her chronic pain or exacerbated by it, but non-severe in themselves. [AR 51.] The ALJ did not find any of Ms. Krick's mental health issues, alone or in combination, to be severe impairments. [AR 10-12.]

[5]   Ms. Krick testified at the hearing that she only rarely drinks alcohol and does not use illegal drugs. [AR 52.] There is no issue in this case concerning application of the SSA's special regulations for cases involving drug and alcohol abuse. [AR 10-11.]

2

[AR 82.]

Ms. Krick has had four shoulder surgeries, two on each shoulder, and she had surgery on her right knee. [AR 46.] She has received injections in her shoulders, her back, and her knee. [AR 47.]

### Ms. Krick's Stated Limitations

In her testimony at the hearing and documents submitted in support of her claim, Ms. Krick explained that she experiences constant pain. She cannot stand, sit, or walk for more than 30 minutes at a time and the only position in which she feels comfortable for extended periods is lying down. As a result, she spends most of the day on the couch. She needs help with household chores and grocery shopping because she is unable to carry bags of groceries. At night, she wakes up constantly from pain when she tries to sleep. She also has trouble cooking and getting dressed. [AR 224-31, 239; *see also id.* at 38-42 (describing experiences of chronic pain, knee swelling, and other issues precluding work).]

### The ALJ's Decision

Jordan Garelick, an ALJ with the Social Security Administration, held a hearing on Ms. Krick's claim. ALJ Garelick denied her claim and his decision now operates as the final decision of the Commissioner subject to review in this proceeding. [AR 8-17 (ALJ's decision).] The ALJ determined that Ms. Krick had the following medically determinable, severe impairments: disorders of muscle ligament fascia; degenerative joint disease; irritable bowel syndrome; and asthma. [AR 10-12.] As is most relevant to the issues presented here, ALJ Garelick determined Ms. Krick's residual functional capacity ("RFC"), which is the most she is capable of doing based on the limitations caused by all of her impairments. He found that despite her impairments, Ms. Krick retains the ability to do sedentary work with additional restrictions. Specifically, ALJ Garelick placed restrictions on: climbing; balancing; reaching overhead; exposure to cold, heat, and humidity; use of moving machinery; and exposure to unprotected

heights. [AR 12-15.] The ALJ also found that Ms. Krick would need to be off task less than 10% of the work day. [AR 12.]

ALJ Garelick specifically determined that Ms. Krick's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." [AR 14.] Particularly relevant here, the ALJ found that despite Ms. Krick's statements about her limitations:

> the record also shows that [Ms. Krick] can care for her personal needs and her dogs, make simple foods, and perform basic household tasks including laundry and changing the beds. She maintains relationships, leaves home unaccompanied to shop, attend appointments, and socialize. [Ms. Krick] is able to drive, handle money, use a computer, knit, read, and watch television. By her own account, she is able to lift up to ten pounds/a gallon of milk . . . .

[AR 14.]

The ALJ also considered the opinion of Ms. Krick's primary care physician, Dr. Sara Nolan. [AR 15.] Dr. Nolan, who had treated Ms. Krick over several years, completed an RFC questionnaire stating: (1) pain would interfere with Ms. Krick's ability to pay attention and concentrate at work on a consistent basis; (2) Ms. Krick would have marked limitation in dealing with the normal stress of competitive employment; (3) she would need to lie down for nearly 6 hours out of an 8-hour work day, shift positions at will, and elevate her legs while sitting; (4) should never lift more than ten pounds; and (5) would need to miss work more than three times per month. [AR 793-96.] Dr. Nolan also explained that Ms. Krick "has constant pain." [AR 796.] In giving this opinion little weight, the ALJ wrote:

> [T]he undersigned gives little weight to the assessment [of] Sara Nolan, M.D., completed on January 23, 2015 . . . . Although Dr. Nolan treated [Ms. Krick], the extreme degree of limitation cited in th[e assessment] form is not

4

> consistent with either the objective evidence of record (including that documented in Dr. Nolan's own treatment notes) or the information provided about the claimant's functional level of activity . . . .

[AR 15.]

## II. Discussion

In reviewing the Commissioner's denial of Ms. Krick's application for benefits the Court determines whether the decision is supported by substantial evidence on the record as a whole or results from an error of law. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017); *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance of the evidence, but is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotation marks omitted). In considering whether there is substantial evidence on the record as a whole, the Court not only examines the record to determine if substantial evidence supports the Commissioner's decision, but also takes into account the evidence in the record that "fairly detracts from that decision." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). However, the Court does not reverse the Commissioner's decision merely because substantial evidence also supports a contrary outcome or the record might support a different conclusion. *Gann*, 864 F.3d at 950; *Reed*, 399 F.3d at 920. The Court reverses the Commissioner's decision only where it falls outside "the available zone of choice," meaning that the Commissioner's findings is not among the possible positions that can be drawn from the evidence in the record. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

Ms. Krick seeks reversal of the Commissioner's decision for three reasons. First, she argues that the ALJ ignored evidence, including information related to her Ehlers-Danlos Syndrome and the fact of her obesity. She contends such evidence supports her claim that she is more severely limited than the RFC finding reflects.

5

[Pl.'s Mem. at 9-13, ECF No. 19.] Second, Ms. Krick argues that the ALJ erroneously concluded that Dr. Nolan's opinion was inconsistent with her own treatment notes and other evidence in the record, and this error caused the ALJ to improperly discount Dr. Nolan's conclusions. [Pl.'s Mem. at 13-17.] Finally, Ms. Krick asserts that the ALJ erred in applying 20 C.F.R. § 404.1529(c)(3). That regulation requires consideration of several factors to assess the intensity, persistence and limited effects of an individual's symptoms, and Ms. Krick asserts that the ALJ analyzed some factors inappropriately and ignored others implicated by record evidence. [Pl.'s Mem. at 17-20.]

### A. RFC Finding and Ignoring Evidence

Ms. Krick first argues that the ALJ's decision must be reversed because the RFC finding was based on an analysis of the record that ignored several pieces of evidence, mischaracterized the record, or incorrectly evaluated the evidence.

#### Ehlers-Danlos Syndrome

Ms. Krick contends that ALJ Garelick ignored her Ehlers-Danlos Syndrome ("EDS"). The Court disagrees. ALJ Garelick specifically discussed Ms. Krick's EDS impairment, correctly acknowledging that it "manifested in overly-flexible joints, with [Ms. Krick] having undergone associated surgeries . . . ." [AR 13.] ALJ Garelick also cited several pieces of evidence that accurately characterize the relevant medical records, including: (1) several rotator cuff repairs and an arthroscopic knee procedure; and (2) physical therapy records that showed Ms. Krick progressed well during her various post-surgical physical therapy programs.[6] [AR 13.] There is no basis to conclude that the ALJ ignored evidence of Ms. Krick's EDS condition, its effect on her joints, or its relationship to her complaints of pain.

---

[6]   *See, e.g.*, AR 307-38; AR 411-30; AR 681-98; AR 702-716; AR 737-54; AR 1099-1160.

Ms. Krick also appears to suggest that the ALJ misunderstood how her EDS impairment affects her because the ALJ's opinion references an imaging study of her cervical spine where the record does not suggest that any spinal issue results from her EDS. [*See* Pl.'s Mem. at 10.] In ALJ Garelick's written decision, he mentions a February 2015 cervical spine imaging result among a list of other MRIs and X-rays that relate to other joints. [AR 13.] Its inclusion in a list of tests that more precisely substantiate Ms. Krick's EDS is, at most, a de minimis mistake. And it does nothing to undermine the ALJ's otherwise accurate discussion of the syndrome. In the same paragraph, the ALJ expressly found that Ms. Krick's EDS manifests itself in overly-flexible joints, which accurately characterizes the medical evidence in the record. Given that the ALJ correctly understood how Ms. Krick's EDS affects her joints, the inclusion of the February 2015 spinal imaging study in that list had no bearing on the outcome. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) ("[A]n arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome.") (internal quotation marks omitted).

**Obesity**

Mr. Krick also contends that the ALJ erred by ignoring evidence of her obesity and failed to discuss the condition at all. [Pl.'s Mem. at 12-13.] Relying on records which assign Ms. Krick a body mass index above 30[7] and indicate that she put on weight during the relevant period, she argues that "the overall record appears to support that [her] obesity certainly aggravated her pain and knee instability . . . ." [*Id.*] The Commissioner concedes that the ALJ erred by failing to discuss the effect of

---

[7] "Body mass index, calculated by one's height and weight, of 30 or higher indicates obesity." *Thielke v. Astrue*, No. 11-cv-3538 (SRN/LIB), 2013 WL 951536, at *9 (D. Minn. Jan. 24, 2013) (citing http://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html), *R&R adopted*, No. 11-cv-3538 (SRN/LIB), 2013 WL 951532 (D. Minn. Mar. 12, 2013).

Ms. Krick's obesity on her functional limitations.[8] However, the Commissioner argues that error is harmless because her treating providers' records do not attribute any functional limitations to her weight and the evidence demonstrates that she was not obese throughout the relevant period as she claims. [Def.'s Mem. at 10-11.]

In a Social Security appeal such as this, an error by the ALJ is not harmless when a claimant provides "some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). Here, there is no indication that ALJ Garelick should have included additional restrictions in Ms. Krick's RFC due to her weight. Most importantly, the medical evidence does not reflect any link between Ms. Krick's functional impairments to her weight. *See* SSR 02-1p, 2002 WL 34686281, at *6 (explaining that in the RFC evaluation "[o]besity can cause limitation of function"). For example, Dr. Nolan's RFC questionnaire does not attribute any of Ms. Krick's limitations to her weight. And the medical records from June and December of 2014 showing Ms. Krick's BMI was slightly over the obesity cutoff do not list obesity as a diagnosis or connect her weight to any functional limits. [AR 933-, 970-78.] For these reasons, the Court concludes that the ALJ would not have reached a different outcome if he had discussed her obesity, and any error in failing to do so is harmless. *McNamara v. Astrue*, 590 F.3d 607, 611 (8th Cir. 2010) ("Nothing in McNamara's medical records indicates that a physician ever placed physical limitations on McNamara's ability to perform work-related functions because of her obesity.").

---

[8]   Both sides point to Social Security Ruling 02-1p, *Evaluation of Obesity*, 2002 WL 34686281 (Sept. 12, 2002). In addition to discussing how the SSA considers obesity and its impact on other impairments, the Ruling states "[a]s with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." *Id.*, 2002 WL 34686281, at *7. The ALJ's failure to do that in this case appears to be the basis for the Commissioner's concession that the ALJ erred. In any event, the Court has reviewed the Ruling in determining whether that error was harmless, including the Ruling's indication that in evaluating an adult's RFC, "[o]besity can cause limitation of function," including exertional, postural, and social functioning. *Id.*, 2002 WL 34686281, at *6.

**Fibromyalgia**

Ms. Krick argues that the ALJ should have connected her neck pain to her fibromyalgia diagnosis and a history of motor vehicle accidents. Because fibromyalgia would not show up on an MRI, she asserts that the ALJ erred in relying on an unremarkable cervical spine imaging result from February 2015. [Pl.'s Mem. at 10-11.] Again, the Court finds no error in the ALJ's reference to the February 2015 MRI or the handling of her diagnosis of fibromyalgia. Dr. Nolan did not list fibromyalgia among the diagnoses that led to her more restrictive opinion reflected in the RFC questionnaire she completed. Instead, Dr. Nolan focused on Ms. Krick's EDS as the basis for her opinions. [AR 793.] Ms. Krick points to medical records from January and July of 2012 showing fibromyalgia diagnoses. These diagnoses were based on positive trigger point tests, including her neck. [*See* AR 349-51, 467-68.] However, these records do not suggest greater functional limitations than those reflected in the ALJ's ultimate sedentary RFC.

Moreover, based on the Court's review of the record as a whole, the ALJ appropriately cited medical records indicating that Ms. Krick regularly demonstrated "normal muscle bulk, tone, and power in her upper and lower extremities as well as normal strength, sensation, reflexes, gait and station."[9] [AR 13.] Where a claimant

---

[9] Ms. Krick asserts that the RFC finding was inaccurate and incomplete because other medical records showed abnormalities in muscle bulk, tone, and power in her upper and lower extremities and abnormal strength, sensation, reflexes, gait, and station. [*See* Pl.'s Mem. at 11 (citing physical therapy and other records).] However, many of these records are consistent with the ALJ's observation that abnormalities in these domains were generally observed close to the time Ms. Krick had surgery or other "exacerbations." [AR 14 ("Except for periods proceeding [sic] specific surgeries or associated with exacerbations, imaging studies and general observations have been generally unremarkable including with regard to strength, sensation, reflexes and gait.").] And the fact that Ms. Krick can point to evidence in the record that weighs against the ALJ's decision does not require reversal. *See Gann*, 864 F.3d at 950 ("[W]e may not reverse the Commissioner's decision merely upon a finding that we would have reached a contrary conclusion.").

alleges she is disabled as a result of fibromyalgia, it is not improper for the ALJ to rely on such evidence in denying a claim because inactivity caused by pain can reasonably be expected to show a reduction in strength and muscle mass. *See Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (affirming ALJ denial of benefits where claimant was diagnosed with fibromyalgia but physicians found that claimant had normal muscle strength); *Ruffin v. Colvin*, No. 14-cv-2611 (KES), 2015 WL 5842340, at *6 (C.D. Cal. Oct. 6, 2015) ("If, however, a person claims that her fibromyalgia is so severe that it causes her to spend the most of her life lying down, as Plaintiff testified in this case, then that person should exhibit some loss of muscle strength and atrophy."). As a whole, although the ALJ's focus was on Ms. Kricks' EDS rather than fibromyalgia, the assessment of her impairments' impact on her ability to function is supported by adequate evidence.

### B. Dr. Nolan's Opinion

Turning to the opinion evidence, Ms. Krick argues that the ALJ erred in discounting Dr. Nolan's opinion. [Pl.'s Mem. at 13-17.] There is no dispute that Dr. Nolan is a treating physician and that her January 23, 2015 assessment is a treating physician's opinion. Such an opinion is entitled to controlling weight where it is "'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantia l evidence in [the] record.'" *Pirtle v. Astrue*, 479 F.3d 931, 933 (8th Cir. 2007) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2))). Even where the treating physician's opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight. *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). If the treating source's opinion is not given controlling weight, an ALJ must evaluate it based on the length of the treating relationship, the frequency of examinations, the nature and extent of the treatment relationship, the support for the opinion in the medical evidence, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Id.*; 20 C.F.R. § 404.1527(c).

"When an ALJ discounts a treating [source's] opinion, he should give good reasons for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

ALJ Garelick gave "little weight" to Dr. Nolan's opinion. [AR 15.] He reasoned that "the extreme degree of limitation cited in [the RFC questionnaire] form is not consistent with either the objective evidence of record (including that documented in Dr. Nolan's own treatment notes) or the information provided about the claimant's functional level of activity as discussed above [in the ALJ's opinion]." [AR 15.]

Because these observations are supported by substantial evidence on the record as a whole, they are "good reasons" supporting the ALJ's decision to discount Dr. Nolan's opinion. ALJ Garelick essentially found that Dr. Nolan's RFC opinion was inconsistent with her own treatment notes, which do not themselves reflect significant restrictions, and in fact contained frequent encouragement for Ms. Krick to get more exercise.[10] It was reasonable for the ALJ to determine that these treatment notes were inconsistent with an opinion that Ms. Krick would need to elevate her leg throughout the day and lie down for six hours of an eight-hour work day and be basically unable to walk. *See Romine v. Colvin*, 609 Fed. App'x 880, 887-88 (8th Cir. 2015) (per curiam) ("'A lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where, as here, the claimant's treating physician[ ][is] recommending increased physical exercise.'") (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009); *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is

---

[10] *See* AR 349-52 (noting chronic pain complaints, that Tramadol was "helping somewhat," and advising Ms. Krick of the need to get "regular exercise as part of her regimen"); AR 471-72 (recommending increase in exercise and cutting down on caffeine); AR 475-77 (encouraging increased movement to help with fibromyalgia); AR 478-79 (noting complaints of pain in shoulders, neck and hip and encouraging more walking); AR 625-27 (recommending range-of-motion exercises for the neck following motor vehicle accident); AR 817-23 (referring to pain management services); AR 824-29 (physical exam record noting EDS and chronic pain and encouraging Ms. Krick to get 150 minutes of aerobic exercise per day).

inconsistent with the physician's own clinical treatment notes."); *Avouris v. Colvin*, No. 4:11-cv-1793 FRB, 2013 WL 4436210, at *11 (E.D. Mo. Aug. 16, 2013) (finding that the ALJ properly discounted a treating doctor's assessment for inconsistency with her own treatment notes because the notes did not reference "a need for plaintiff to elevate her leg above her heart when sitting, or to limit her activity in the extreme manner described in the RFC assessment"). Substantial evidence in the record as a whole also supports ALJ Garelick's determination that Ms. Krick is able to function at a greater level than that reflected in Dr. Nolan's RFC opinion.[11] Given that medical records indicate Ms. Krick was able at various times to walk up to two miles, climb stairs, do household chores, and engage in other activities, it was not unreasonable for the ALJ to conclude that Dr. Nolan's more restrictive RFC opinion was inconsistent with Ms. Krick's functional level of activity.

Because substantial evidence on the record as a whole supported the reasons the ALJ provided for discounting Dr. Nolan's RFC opinion, the ALJ did not commit reversible error in assigning that opinion little weight.[12]

---

[11] AR 377-80, 601 (records of pre-operative physicals stating "[p]atient is able to walk one-two miles, climb one flight of stairs and perform activities of daily living without difficulty"); AR 640, 859, 871 ("She is able to climb one flight of stairs and perform yard work, household cleaning, grocery shopping, etc. without trouble.").

[12] Ms. Krick also asserts that ALJ Garelick "ignores the fact that Dr. Nolan has been treating her since 2006." [Pl.'s Mem. at 15.] It is clear that "[i]n considering how much weight to give a treating physician's opinion, an ALJ must . . . consider the length of the treatment relationship and the frequency of examinations." *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007). ALJ Garelick's decision does not discuss this factor expressly, though the length of Dr. Nolan's treatment of Ms. Krick may have merited more discussion. 20 C.F.R. § 404.1527(d)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). However, though ALJ Garelick was required to consider all the factors listed in the applicable regulation, he was not required to discuss each of them. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (providing that "an ALJ's failure to cite specific evidence does not indicate that it was not considered"); *Derda v. Astrue*, No. 4:09-cv-01847 AGF,

(*footnote continued on following page*)

### C. Assessing Symptoms, Including Pain, and Ms. Krick's Statements

Ms. Krick next contends that the ALJ erred in assessing the factors listed in 20 C.F.R. § 404.1529(c)(3) and SSR 96-7p.[13] Pursuant to § 404.1529(c)(3), the ALJ must consider several factors in evaluating a claimant's symptoms, such as pain, including: daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication to alleviate pain and other symptoms; treatments other than medication; measures used to alleviate pain or other symptoms; and other factors concerning limitations and restrictions due to pain and other symptoms. *Id.* § 404.1529(c)(3)(i)-(vii). These are the familiar *Polaski* factors, so named after the Eight Circuit's decision in *Polaski v. Heckler*, 739 F.3d 1320 (8th Cir. 1984). In cases where a claimant alleges that pain from her impairments causes a disability, the Eighth Circuit has observed the following: "[o]ur cases admittedly send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain," but it is not unreasonable for an ALJ to rely on evidence that a claimant "engaged in an array of [daily] activities . . . to infer that [her] assertion of disabling pain was not entirely credible." *Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009).

---

(*footnote continued from previous page*)
2011 WL 1304909, at *10 (E.D. Mo. Mar. 31, 2011) (finding that an ALJ need not discuss each factor listed in § 404.1527). Here, the Court concludes that the ALJ satisfied the requirement to give good reasons for discounting Dr. Nolan's opinion by discussing the inconsistencies in the record.

[13]   SSR 16-3p became effective on March 28, 2016, and supersedes SSR 96-7p. SSR 16-3p "eliminat[es] the use of the term 'credibility' from [SSA's] sub-regulatory policy, as [the] regulations do not use this term. In doing so, [the SSA] clarify[ies] that subjective symptom evaluation is not an examination of an individual's character. Instead, [the SSA] will more closely follow our regulatory language regarding symptom evaluation." SSR 16-3p, 2016 WL 1119029, Titles II & XVI: Evaluation of Symptoms in Disability Claims (S.S.A. Mar. 16, 2016).

Here, the Court finds no error in the ALJ's observation that "the objective evidence does not support the degree of debilitation alleged," [AR 14], is supported by substantial evidence on the record as a whole. As noted above, the ALJ appropriately found that Ms. Krick's medical records show that she has "consistently recovered from surgery without complication and then done well in physical therapy." [AR 14]; *see, e.g.*, records cited, *supra*, in footnotes 6 & 9.

Ms. Krick argues that the ALJ improperly evaluated her activities of daily living in discounting her subjective complaints of pain. [Pl.'s Mem. at 18-19.] There is no question that Ms. Krick's treatment records document consistent complaints of pain. However, this is not a case where the ALJ completely disregarded Ms. Krick's complaints of pain based on her daily activities, but rather observed that records show she has a greater degree of daily functioning than alleged. The ALJ observed that Ms. Krick

> can care for her personal needs and her dogs, make simple foods, and perform basic household tasks including laundry and changing the beds. She maintains relationships, leaves home unaccompanied to shop, attend appointments, and socialize. [She] is able to drive, handle money, use a computer, knit, read, and watch television.

[AR 14.] Though it is true that a claimant need not be bedridden to prove an inability to engage in full-time work, *see Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005), the Eighth Circuit has also found that a claimant's shopping, driving short distances, attending church, and visiting relatives were inconsistent with the assertion of disabling pain, *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). ALJ Garelick considered Ms. Krick's daily activities in assessing her statements about the limiting effects of her symptoms, and his conclusion has substantial evidentiary support, which places his assessment on this issue within the zone of choice permitted by the record as a whole. [*See , e.g.*, AR 33 (testifying that she was able to driver herself to the hearing, though she stopped at one point); AR 53-54 (describing walking around a Target and stating that she is able to lift a gallon of milk); AR 59 (describing self-care

activities as well as doing dishes and laundry, though limited); AR 379 (indicating Ms. Krick is able "to climb one flight of stairs and perform yard work, household cleaning, grocery shopping, etc. without trouble"); AR 601 (indicating Ms. Krick is able to walk 1-2 miles").]

Finally, Ms. Krick argues that the ALJ did not properly analyze the side effects from her medications. [Pl.'s Mem. at 19.] However, based on the Court's review of the record as a whole, there is no error in the ALJ's observation that the "treatment notes do not contain contemporaneous documentation of ongoing complaints of significant negative side effects." [AR 14.] Ms. Krick's ability to point to discrete medical records addressing side effects does not demonstrate the ALJ's finding was unsupported by substantial evidence. Ms. Krick cites a record from September 2013 following her right knee surgery where she was temporarily taking Oxycontin and Oxycodone. [AR 880.] A physician's assistant noted that Ms. Krick's nausea was related to her pain medications, which could be switched, but Ms. Krick did not want to switch her medications. [AR 880.] But this was not an ongoing issue. Ms. Krick also cites a May 2012 treatment record with Dr. Nolan where she presented for a sleep problem and noted that Nortriptyline made her feel "wired." [AR 368-70.] Dr. Nolan recommended that she follow up with her mental health provider for her sleep issues, but did not discontinue her medication. [AR 370.] These records do not support reversal of the ALJ's decision.

### III.   Order

For the reasons stated above, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment **[ECF No. 18]** is **DENIED**.

2. Defendant's Motion for Summary Judgment **[ECF No. 20]** is **GRANTED**.

3. This matter is **DISMISSED WITH PREJUDICE**.

**Let Judgment be entered accordingly**.

Date: March 16, 2018              *s/Katherine Menendez*
                                                                          Katherine Menendez
                                                                          United States Magistrate Judge